UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEC S.,<br><br>          Plaintiff,<br><br>          v.<br><br>ANDREW M. SAUL, Commissioner of Social Security Administration,<br><br>          Defendant. | Case No. ED CV 18-2189-SP<br><br>MEMORANDUM OPINION AND ORDER |

**I.**

**<u>INTRODUCTION</u>**

On October 15, 2018, plaintiff Alec S. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of disabled child's insurance benefits ("DCIB") for an adult disabled since childhood, as well as review of denial of supplemental security income ("SSI"). The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two disputed issues for decision: (1) whether the

Administrative Law Judge ("ALJ") properly considered the opinion of the treating physician; and (2) whether the ALJ properly considered the opinion of the examining physician. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 2-12; *see* Defendant's Memorandum in Support of Answer ("D. Mem.") at 1-7.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered the opinions of the treating and examining physicians. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 14 years old on the alleged disability onset date, is a high school graduate. AR at 39, 55. He has no past relevant work. *Id*. at 51.

On October 29, 2014, plaintiff filed applications for DCIB and SSI, due to anxiety, insomnia, attention deficit hyperactivity disorder ("ADHD"), and paranoia. *Id*. at 55, 64. The applications were denied initially and upon reconsideration, after which plaintiff filed a request for a hearing. *Id*. at 112-25, 129-30.

On July 24, 2017, the ALJ held a hearing. *Id*. at 32-54. Plaintiff, represented by counsel, appeared and testified at the hearing. *Id*. The ALJ also heard testimony from Antoinette S., plaintiff's mother, and Aida Worthington, a vocational expert. *See id*. at 43-52. On November 6, 2017, the ALJ denied plaintiff's claims for benefits. *Id*. at 17-27.

In order for a claimant 18 years of age or older to qualify for disabled child's insurance benefits, he or she must demonstrate he or she had a disability that began before turning 22 years of age. 20 C.F.R. § 404.350(a)(5). Here, before applying

the well-known five-step sequential evaluation process, the ALJ determined plaintiff had not attained the age of 22 as of the alleged onset date. AR at 19.

The ALJ then found, at step one, that plaintiff had not engaged in substantial gainful activity since September 7, 2006, the alleged onset date. *Id*.

At step two, the ALJ found plaintiff suffered from the following severe mental impairments variously diagnosed to include major depressive disorder, bipolar disorder, anxiety disorder, obsessive compulsive disorder, and ADHD. *Id*. at 20.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id*.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined plaintiff had the RFC to perform a full range of work at all exertional levels, but with the nonexertional limitations that plaintiff could: understand, carry out, and remember simple instructions and make commensurate work related decisions; respond appropriately to supervision, coworkers, and work situations; deal with routine changes in work setting; maintain concentration, persistence, and pace for up to and including two hours at a time with normal breaks throughout the workday; and be around coworkers throughout the day so long as he was required to have only occasional interaction with them. *Id*. at 21-22. The ALJ found plaintiff should have a job requiring no interaction with the public. *Id*. at 22.

The ALJ found, at step four, that plaintiff had no past relevant work. *Id*. at

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

26.

At step five, the ALJ found there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including marker, linen room attendant, and hand packager. *Id*. at 26-27. Consequently, regarding the DCIB application, the ALJ concluded plaintiff was not disabled as defined by the Social Security Act prior to attaining age 22. *Id*. at 27. Regarding the SSI application, the ALJ likewise concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.*

Plaintiff filed a timely request for review of the ALJ's decision, but the Appeals Council denied the request for review. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's

finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## DISCUSSION

Plaintiff argues the ALJ failed to properly consider the opinions of treating physician Dr. Salvador E. Lasala and examining physician Dr. Clifford Taylor. P. Mem. at 2-12. Specifically, plaintiff contends the ALJ did not cite specific and legitimate reasons supported by substantial evidence for discounting these opinions. *Id.*

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. §§ 404.1527(b), 416.927(b).[2] In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246

---

[2] All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

5

F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

A. **The Medical Evidence and ALJ's Findings**

1. **Dr. Oscar Estrada**

Dr. Estrada, a psychiatrist, treated plaintiff sporadically from sometime prior to February 2009 through July 2011. *See id*. at 293, 306. During this time, although plaintiff was being treated for depression and anxiety, his chief complaint was insomnia. *See id*. at 286, 294. Plaintiff also complained of excessive worry, feeling on the edge, and difficulty concentrating. *Id*. Dr. Estrada observed plaintiff was irritable and anxious on occasion but had otherwise normal findings. *See, e.g., id*. at 287, 294, 307, 315. Dr. Estrada noted plaintiff was not compliant with his treatment plan, both not taking some medications while taking too much

of another. *See id*. at 294, 307, 315.

### 2. **Dr. Ochuko G. Diamreyan**

Dr. Diamreyan, a psychiatrist, examined plaintiff on two occasions in October 2014. *Id*. at 391-92. Plaintiff reported he suffered from insomnia, headaches, anxiety, claustrophobia, nervousness, ADHD, and depression. *See id*. at 391. At the first examination, plaintiff told Dr. Diamreyan he wanted to get back on his medications and obtain SSI. *See id.* At the second examination, plaintiff told Dr. Diamreyan he wanted more Ambien, did not like Buspar, and only liked Ativan. *See id*. at 392. Dr. Diamreyan observed plaintiff had poor concentration and an anxious mood, but otherwise normal clinical findings. *See id*. Dr. Diamreyan noted plaintiff believed he suffered from bipolar disorder, was non-compliant with his medications, and disagreed with him about the treatment plan. *See id.* Based on the examinations and history, Dr. Diamreyan diagnosed plaintiff with anxiety disorder, not otherwise specified, depressive disorder, not otherwise specified, and ADHD by history. *Id*. at 391. Dr. Diamreyan referred plaintiff to Dr. Salvador Lasala. *See id*. at 392.

### 3. **Dr. Clifford Taylor**

On January 29, 2015, Dr. Taylor, a psychologist, examined plaintiff, reviewed Dr. Diamreyan's initial examination treatment note, and administered some tests. *Id*. at 362-69. Plaintiff reported to Dr. Taylor that he suffered from anxiety, agoraphobia, claustrophobia, difficulty being around others, a strong desire to leave situations, difficulty dealing with stress, paranoia, and aggression toward others. *Id*. at 363. In a separate form, plaintiff indicated he suffered from panic attacks, heard voices, had unexplained fits of anger, had memory problems, and had ADHD. *See id*. Although plaintiff claimed to have auditory hallucinations and paranoia, he was unwilling to discuss either. *See id*. at 363, 365. Plaintiff also reported he had a long history of psychiatric treatment, had three

psychiatric hospitalizations, and was currently on Ambien, Zoloft, and Ativan. *See id*. at 363, 368. Plaintiff denied current or past abuse of alcohol or illicit drugs. *See id*. at 364.

Dr. Taylor observed plaintiff, among other things, was highly anxious, had poor eye contact, was some somewhat secretive and evasive, was easily distracted, had normal speech, was able to follow directions, had a depressed and irritable mood, and had a linear and logical thought process. *See id*. at 365. Dr. Taylor also observed plaintiff did not appear to responding to internal stimuli. *See id*.

Based on the history, examination, one treatment note, and testing, Dr. Taylor diagnosed plaintiff with major depressive disorder, severe, with psychotic features (consider bipolar disorder) and unspecified anxiety disorder. *Id*. at 368. Dr. Taylor opined plaintiff had a mild impairment in his ability to understand, carry out, and remember simple instructions and moderate impairments in his ability to perform typical daily activities and maintain concentration, persistence, and pace. *Id*. Dr. Taylor further opined plaintiff had marked impairments in his ability to: function in work settings due to repeated episodes of emotional deterioration; respond appropriately to family, co-workers, supervisors, and the public; and respond appropriately to usual work situations and deal with changes in a routine work setting. *Id*. at 368-69.

### 4. **Dr. Salvador Lasala**

Dr. Lasala, a psychiatrist, treated plaintiff for an unspecified period. At his first examination in February 2015, Dr. Lasala observed plaintiff had a depressed mood, poor insight and judgment, poor concentration, and otherwise normal findings. *Id*. at 379. Dr. Lasala diagnosed plaintiff with bipolar I disorder, most recent episode mixed, and switched him from Clonazepam to Seroquel. *Id*. at 379-80. Dr. Lasala also recorded similar observations – guarded behavior, blunted affect, anxious and depressed mood, and poor insight and judgment – at the March

2015 mental status examination. *Id*. at 381. Plaintiff told Dr. Lasala he felt helpless and unmotivated, and he had stopped taking Seroquel because it made him oversedated. *Id*. At his fifth and last documented examination in June 2015, plaintiff reported having obsessions and compulsions, fair sleep, and less irritability. *Id*. at 374. Dr Lasala observed plaintiff had an anxious mood and poor insight and judgment, but otherwise normal findings. *Id*.

Dr. Lasala completed a form Medical Opinion Ability to Do Work Related Activities (Mental), dated August 24, 2017. *Id*. at 389-90. In his opinion, Dr. Lasala checked plaintiff's mental abilities were "seriously limited but not precluded" in most areas, including understanding and remembering short and simple instructions, maintaining attention for two-hour segments, and performing at a consistent pace without an unreasonable number and length of rest periods. *Id*. Dr. Lasala opined plaintiff's mental capabilities left him "unable to meet competitive standards" in the following areas: accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; understand, remember, and carry out detailed instructions; and deal with the stress of semiskilled and skilled work. *Id*. Dr. Lasala also opined plaintiff's impairments would cause him to be absent from work more than three times a month. *Id*. at 390.

5. **State Agency Physicians**

Dr. H. Amado and Dr. Tawnya Brode, State Agency physicians, reviewed plaintiff's medical records. Dr. Amado reviewed two of Dr. Estrada's treatment notes from September 2010 and July 2011, one of Dr. Diamreyan's treatment notes, Dr. Taylor's opinion, and plaintiff's school assessment. *See id*. at 58-60. Dr. Brode reviewed the same records, as well as three of Dr. Lasala's treatment notes. *See id*. at 84.

Based on his review of the medical records, Dr. Amado opined that from July 2, 2010 through July 2, 2014, plaintiff had severe affective and anxiety disorders. *Id*. at 69. Dr. Amado further opined plaintiff had moderate limitations in his ability to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and respond appropriately to change in the work setting. *Id*. at 72-73. Dr. Amado determined there was not enough longitudinal documentation of a disabling impairment and the records indicated plaintiff's conditions were potentially treatment responsive. *See id*. at 70.

Likewise, Dr. Brode determined petitioner suffered from severe affective and anxiety disorders from July 2, 2010 through July 2, 2014, but the evidence did not support the presence of a disabling impairment for twelve continuous months. *See id*. at 85. For the period from October 1, 2014 through October 1, 2015, Dr. Brode opined the same non-exertional limitations as Dr. Amado. *See id*. at 86-89. Dr. Brode also opined plaintiff would be capable of work within one year of psychiatric treatment. *Id*. at 89.

### 6. The ALJ's Findings

In reaching his RFC determination, the ALJ afforded significant weight to Dr. Amado's and Dr. Brode's opinions, some weight to Dr. Taylor's opinion, and little weight to Dr. Lasala's opinion. *Id*. at 24-25. The ALJ gave Dr. Amado's and Dr. Brode's opinions the greatest weight because they were consistent with the record as a whole. *See id*. at 25. The ALJ gave some weight to Dr. Taylor's opinion to the extent it was consistent with the ALJ's findings and specifically

rejected Dr. Taylor's marked limitations. *See id*. at 24. Finally, the ALJ gave little weight to Dr. Lasala's opinion because it was inconsistent with the record as a whole, there were few treatment records, and plaintiff's symptoms improved in the homeschool setting. *See id*. at 25.

**B.    The ALJ Properly Considered Dr. Lasala's Opinion**

One reason the ALJ cited for giving little weight to Dr. Lasala's opinion was the brevity of the treatment records. AR at 25. Plaintiff testified that he was still undergoing treatment with Dr. Lasala at the time of the hearing, but only submitted treatment notes from five sessions between February and July 2015, which documented improved objective findings as treatment progressed. *See id*. at 40, 374-83. There was no evidence of treatment outside of those four months. Moreover, the limited treatment notes provided little insight into plaintiff's psychological functioning. Given the dearth of treatment records, the ALJ correctly questioned the basis of Dr. Lasala's August 2017 opinion.

Plaintiff argues that the ALJ had a duty to develop the record since plaintiff testified Dr. Lasala was still treating him. *See* P. Mem. at 8-9. But the ALJ afforded plaintiff the chance to do so. At the hearing, the ALJ granted plaintiff's request for two weeks to obtain medical records and told him to submit a written request should he require additional time. AR at 35. Despite the additional time, plaintiff only submitted Dr. Diamreyan's treatment notes and Dr. Lasala's post-hearing opinion. *See id*. at 389-92. Although plaintiff claims Dr. Lasala did not respond to his requests for records, the fact he was able to obtain an opinion after the hearing calls that claim into question. In short, the ALJ gave plaintiff the opportunity to further develop the record and did not err because plaintiff failed to gather all the records he might have. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical

11

condition, to do so.").

The ALJ additionally rejected Dr. Lasala's opinion because it was inconsistent with the record as a whole. AR at 25; *see Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that an ALJ may discredit physicians' opinions that are "unsupported by the record as a whole . . . or by objective medical findings"). The record reflects plaintiff sought psychiatric treatment periodically from February 2009 through June 2015. AR at 306, 374. Plaintiff complained of, among other things, anxiety, insomnia, depression, and paranoia, and his mental status exams reflected he was anxious and, at times, depressed and irritable. *See, e.g., id.* at 286-87, 294, 379, 381. But his physicians consistently noted plaintiff: had a logical, coherent, and linear thought process; had normal speech; was alert and oriented; and had mostly normal findings. *See, e.g., id*. In addition, the treatment notes showed plaintiff only sought periodic treatment and was frequently non-compliant. *See id*. at 294, 307, 315, 281, 391-92. Although a small sample size, plaintiff's objective symptoms appeared to improve somewhat during Dr. Lasala's treatment, as well as when earlier provided accommodations as discussed below. *See id*. at 374-77; *Crosby v. Comm'r*, 489 Fed. Appx. 166, 168-69 (9th Cir. 2012) (finding that a physician's opinion that was inconsistent with his treatment notes, which indicated claimant improved with treatment, was a specific and legitimate basis to discount physician's opinion); *see also Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits.").

The ALJ's third reason for discounting Dr. Lasala's opinion – the records reflected plaintiff was successful in a one-on-one homeschool setting – correlates with his finding that the opinion was inconsistent with the record as a whole. *Id*. at 25. Plaintiff's ability to succeed in an individualized setting with less public

contact demonstrated plaintiff could function successfully within structured environments, particularly before he turned 22 years of age. *See id*. at 25; *see also Jose M. v. Comm'r*, 2018 WL 4179104, at *7 (E.D. Wash. Jul. 30, 2018) (ALJ's finding that plaintiff had less than marked impairments in acquiring and using information was supported by plaintiff's academic success in an alternative school). Arguably, plaintiff's performance in the homeschool program may not translate into a work environment, but it can reasonably support the ALJ's decision. In the context of the overall record documenting mostly normal findings and a lack of compliance, plaintiff's homeschool performance supported the ALJ's finding that plaintiff was capable of improvement and functioning successfully. *See Mead v. Astrue*, 330 Fed. Appx. 646, 648 (9th Cir. 2009) (evidence showing that a plaintiff's condition improved with treatment may be a clear and convincing reason for an adverse credibility finding).

Finally, without expressly citing it as a basis for rejecting the opinion, the ALJ also noted Dr. Lasala's opinion was on a check-box form with no explanations to support the opined limitations. AR at 25; *see Magallanes*, 882 F.2d at 755 (an ALJ need not recite "magic words," a reviewing court may draw inferences from an opinion). It was proper for the ALJ to reject a conclusory opinion. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (check off reports may be rejected for lack of explanation of the bases for their conclusions).

Accordingly, the ALJ properly considered Dr. Lasala's opinion and cited specific and legitimate reasons supported by substantial evidence for rejecting the opinion.

C. **The ALJ Properly Considered Dr. Taylor's Opinion**

Plaintiff contends the ALJ similarly failed to provide specific and legitimate reasons for giving less weight to Dr. Taylor's opinion. P. Mem. at 9-12.

In reaching his RFC determination, the ALJ gave Dr. Taylor's opinion some

weight to the extent it was consistent with his decision. AR at 24. Specifically, the ALJ accepted Dr. Taylor's mild and moderate findings but rejected his opinion that plaintiff had marked impairments in his ability to: function in work settings due to repeated episodes of emotional deterioration; respond appropriately to family, co-workers, supervisors, and the public; and respond appropriately to usual work situations and deal with changes in a routine work setting. *Id*. at 368-69.

The first reason the ALJ cited for discounting Dr. Taylor's opinion was that he only reviewed one treatment note, Dr. Dimereyan's initial psychiatric evaluation. *Id*. at 24; *see id.* at 363. To the extent the ALJ rejected Dr. Taylor's opinion on this basis, it was not a specific and legitimate reason. The regulations clearly state that an ALJ must consider the opinions of examining physicians. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Thus, the ALJ must consider Dr. Taylor's opinion even if he had not reviewed any medical records at all. Nonetheless, the fact that Dr. Taylor only reviewed one of plaintiff's treatment records may be a factor in assigning the opinion less weight.

The second reason the ALJ cited for rejecting portions of Dr. Taylor's marked limitations was that it was inconsistent with the record as a whole. AR at 24; *see Batson*, 359 F.3d at 1195; *Magallanes*, 881 F.2d at 751-54 (affirming rejection of physician's opinion because it was inconsistent other medical evidence). Specifically, the ALJ noted plaintiff did well in one-on-one situations and he obtained good grades in the homeschool program. *See* AR at 24. As discussed above, plaintiff's performance in the homeschool program indicated plaintiff was able to function successfully within certain parameters. Plaintiff could maintain concentration and attention, as well as work with a teacher, when he had less public contact. *See id.* Given plaintiff's ability to improve functionally, as well as mostly normal objective findings and his non-compliance with treatment as discussed above, there was substantial evidence to support the

14

ALJ's finding that Dr. Taylor's opined marked impairments were inconsistent with the record as a whole.

The ALJ also suggested he gave less weight to Dr. Taylor's opinion because the subjective complaints and history plaintiff related to Dr. Taylor were inconsistent with the record. *See* AR at 24, 25. An ALJ may reject medical opinions based on a claimant's subjective complaints where his testimony has been properly discounted, as plaintiff's was here. *See* AR at 23-26; *Morgan*, 169 F.3d at 602 ("A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted.") (internal quotation marks and citation omitted). Here, the ALJ correctly identified three statements that were inconsistent with the record. First, plaintiff denied any prior drug abuse, but Dr. Estrada diagnosed him with a history of polysubstance abuse in 2009 and noted plaintiff was abusing Temazepam. *See* AR at 24, 25, 307, 315, 364. Plaintiff's mother also told Dr. Lasala plaintiff abused drugs in the past. *See id*. at 379. Second, plaintiff told Dr. Taylor he had three psychiatric hospitalizations but the administrative record does not contain any records of the hospitalizations. *See id*. at 24, 25, 363. And third, plaintiff claimed to hear voices but all of his treatment notes indicated he did not have auditory hallucinations. *See id*. at 24, 25, 363, 365; *see also, e.g., id*. at 287, 294, 307, 391. Plaintiff was also unable to explain the nature of his hallucinations and did not appear to be responding to internal stimuli. *Id*. at 24, 365.

Accordingly, the ALJ provided sufficient specific and legitimate reasons supported by substantial evidence for giving Dr. Taylor's opinion only some weight.

# V.
# **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

Dated: March 23, 2020

_____
SHERI PYM
United States Magistrate Judge